UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STACEY GREENFIELD, derivatively on behalf of IMMERSION CORPORATION,<br><br>Plaintiff,<br><br>-v-<br><br>SENVEST MANAGEMENT, LLC, SENVEST MASTER FUND, L.P., SENVEST ISRAEL PARTNERS, L.P., SENVEST INTERNATIONAL L.L.C., RICHARD R. MASHAAL and IMMERSION CORPORATION,<br><br>Defendants. | Civil Action No.<br><br>(*Jury Trial Demanded*) |

## COMPLAINT

Plaintiff Stacey Greenfield ("Greenfield"), by her undersigned attorneys, alleges upon information and belief as to all paragraphs except paragraph 1, as follows:

1.  Plaintiff Greenfield is a New York resident who is the owner of common stock, $0.001 par value (the "Common Stock"), of Immersion Corporation ("Immersion" or the "Company").

2.  Immersion, a nominal defendant herein, is a Delaware corporation with its principal place of business at 50 Rio Robles, San Jose, CA 95134.

3.  Defendant Senvest Management, LLC (formerly known as Rima Senvest Management, LLC) ("Senvest Management") is a Delaware limited liability company with its principal place of business at 540 Madison Avenue, 32nd Floor, New York, New York 10022.

Senvest Management serves as investment manager and general partner of each of Senvest Master Fund, L.P. ("Senvest Master") and Senvest Israel Partners, L.P. ("Senvest Israel"). Senvest Management is a registered investment adviser.

4.      Defendant Senvest Master is a private Cayman Islands investment limited partnership with its principal place of business at 540 Madison Avenue, 32nd Floor, New York, New York 10022.

5.      Defendant Senvest Israel is a private Delaware investment limited partnership with its principal places of business at 540 Madison Avenue, 32nd Floor, New York, New York 10022.

6.      Defendant Senvest International, L.L.C. ("Senvest International") is a Delaware limited liability company with its principal place of business at 540 Madison Avenue, 32nd Floor, New York, New York 10022. Senvest International is a registered broker-dealer. Senvest International is 100% owned by Senvest Capital Inc. ("Senvest Capital"), a Canadian public company that trades on the Toronto Stock Exchange. Senvest International owns 100% of Senvest Fund Management, Inc. ("Senvest Fund Management"). Senvest Management has an expense sharing agreement with Senvest International for certain administrative and payroll services. All employees of Senvest Management, including its supervised persons, are also employed by Senvest International. Senvest Fund Management and Senvest Capital each act as a sub-advisor to Senvest Israel. Mashaal is the President of and has voting and investment power over the Immersion securities held for the account of Senvest International.

7.      Defendant Richard R. Mashaal ("Mashaal" and together with Senvest Management, Senvest Master, Senvest Israel and Senvest International, the "Senvest Group") is a Canadian citizen with a business address at 540 Madison Avenue, 32nd Floor, New York, New

2

York 10022. Mashaal founded Senvest Management in 1997, is its Chief Executive Officer and Managing Member and, together with entities related to him, owns 100% of Senvest Management.

## JURISDICTION AND VENUE

8.      This action is brought derivatively on behalf of Immersion pursuant to Section 16(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78p ("§16(b)"), to obtain disgorgement of profits obtained by defendants in violation of that statute. Jurisdiction of this court and venue in this District are proper pursuant to 15 U.S.C. § 78(a)(a) in that certain of the acts underlying this action occurred in this District.

## THE GOVERNING LAW

9.      Section 16(b) of the Exchange Act provides that if a person, while beneficially owning more than 10 percent of a class of equity securities of an issuer, purchases and sells, or sells and purchases shares of any equity security of such issuer within a period of less than six months, any profits arising from those transactions are recoverable by the issuer or by a shareholder suing derivatively on its behalf.

10.     The stated purpose of Section 16(b) is to "prevent [] the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer." 15 U.S.C. § 78p(b). Strict liability and disgorgement were imposed by §16(b) "to remove any temptation for insiders to engage in transactions which 'may serve as a vehicle for the evil which Congress sought to prevent -- the realization of short-swing profits based upon access to inside information.'" "Section 16(b) operates mechanically, and makes no moral distinctions, penalizing technical violators of pure heart, and bypassing corrupt insiders

3

who skirt the letter of the prohibition. 'Such is the price of easy administration.'" (citation omitted). *Magma Power Co. v. Dow Chemical*, 136 F. 3d 316, 320-21 (2d Cir. 1998).

11.     Under Section 16(a) of the Exchange Act and SEC Rule 16a-3 promulgated thereunder, statutory insiders are required to report securities transactions to the marketplace in a timely fashion. *See* SEC Investor Bulletin, "Insider Transactions and Forms 3, 4, and 5" (http://www.sec.gov/investor/alerts/forms-3-4-5.pdf).

12.     Courts have rejected efforts by hedge funds to avoid Section 16(b) liability by purporting to "divest" their beneficial ownership. Relying on these contrived divestitures, hedge fund managers who have established a small group of hedge funds to acquire greater than 10% beneficial ownership positions, with presumed access to inside information, have used these artifices to evade their Section 13(d) and Section 16(a) reporting obligations and to conceal their short-swing trading and profits. *Huppe v. WPCS Int'l Inc.*, 670 F.3d 214, 215-217 (2d Cir. 2012)(where a principal delegated "exclusive power to make all investment and voting decisions" to an agent, both principal and agent were beneficial owners). *See also, Greenberg v. Hudson Bay Master Fund Ltd.*, 2015 U.S. Dist. LEXIS 62236, *21 (S.D.N.Y. 2015)("purchaser may not avoid Section 16(b) simply by delegating voting and investment authority to a third party"). As shown in paragraphs 16 through 21, *infra*, the Senvest Group employed such an artifice in this case to hide their trading in Immersion Common Stock and avoid disgorgement of most of their unlawful profits.

## SECTION 16(b) GROUP ACTIVITY

13.     Under SEC Rule 16a-1(a)(1) promulgated under the Exchange Act, where two or more persons "act as a partnership, limited partnership, syndicate, or other group for the purpose of acquiring, holding or disposing of securities of an issuer" as set forth in Section 13(d)(3) of

4

the Exchange Act ("§13(d)"), such persons are deemed to be a "group" for purposes of determining §16(b) liability. Under SEC Rule 16a-1, the shares held by persons in such a group are aggregated to determine whether the group has a greater than 10% beneficial ownership in the issuing corporation. If the aggregate number of shares beneficially owned by the group exceeds 10%, each member of the group is deemed to be a greater than 10% beneficial owner and is liable to disgorge profits arising from transactions by such group member effected within a six-month period.

14.     The facts that support the existence of a group are overwhelming. Senvest Management is the common investment adviser to each of Senvest Master and Senvest Israel and serves as the investment manager and general partner of each of Senvest Master and Senvest Israel. Mashaal is the chief executive officer and managing member of Senvest Management and has voting and investment power over the Immersion securities held for the accounts of Senvest Master and Senvest Israel. Mashaal also is the President of and has voting and investment power over the Immersion securities held for the account of Senvest International. All employees of Senvest Management, including its supervised persons, are also employed by Senvest International. These facts irrefutably lead to the conclusion that the members of the Senvest Group agreed to act together for the purposes of trading in Immersion securities.

15.     Accordingly, defendants Senvest Management, Senvest Master, Senvest Israel, Senvest International and Mashaal constitute a group for purposes of determining beneficial ownership under §§ 13(d)(3) and 16(b) of the Exchange Act. At all relevant times, the Senvest Group was a greater than 10% beneficial owner of the Company's Common Stock, and garnered short-swing profits disgorgeable to the Company in the transactions hereinafter set forth.

## DEFENDANTS' PURCHASE AND SALE TRANSACTIONS

16.     During the period beginning in October 2012 and through July 2014, the Senvest Group engaged in hundreds of purchases and sales of shares of Common Stock and derivative securities respecting the Common Stock, the vast majority of which were effected while the Senvest Group was a greater than 10% beneficial owner of Immersion Common Stock.  The Senvest Group filed on a delinquent basis (as late as almost <u>two years</u> in a substantial number of cases) a number of Form 4's that revealed the existence of disgorgeable short-swing profits, but failed to properly report the transactions of the individual group members, as required, in a blatant attempt to obscure the true extent of the short-swing profits realized by the Senvest Group.  Rather, in an attempt to give the false appearance that the Senvest Group was complying with its Form 4 filing obligations (albeit on an egregiously delinquent basis), only Senvest Management and Mashaal filed Form 4's and their Form 4 filings only purported to report the number of shares representing Senvest Management's and Mashaal's pecuniary interests.

17.     For periods ranging from a few months to as long as 21 months, the Senvest Group had not made the required Form 4 filings, but after agreeing to the entry of an administrative order by the Securities and Exchange Commission ("SEC") where the SEC had found that the Senvest Group had violated Sections 13(d) and 16(a) of the Exchange Act, the Senvest Group made its delinquent filings to create the false impression that it had finally complied with its filing obligations.  However, these filings merely purported to report a small fraction of the actual transactions engaged in by members of the Senvest Group and obscured the true extent of the Senvest Group's short-swing profits.

18.     The deficiencies in the Senvest Group's Form 4 filings cover transactions delinquently filed on August 1, 2014 dating back to October 31, 2012 and continuing through

6

July 22, 2014. Each member of the Senvest Group was obligated to report its transactions while the Senvest Group was a greater than 10% beneficial owner of Immersion Common Stock, but the Senvest Group failed to make its required filings, thereby depriving the marketplace of important information and hiding the substantial short-swing profits that the Senvest Group amassed.

19. The failure of the Senvest Group to properly report its transactions can be seen from a comparison of the delinquent Form 4 filings made by Senvest Management and Mashaal on August 1, 2014 and Schedule 13G and Form 13F filings made by Senvest Management and other members of the Senvest Group at various times. For example, in the Senvest Group's delinquent Form 4 filings made on August 1, 2014, Column 5 of Table I reports ownership figures ranging from 336,041 shares to 556,786 shares (not including beneficial ownership from call options). These Form 4's cover the period beginning on October 31, 2012 and ending July 22, 2014. In the Senvest Group's Schedule 13G/A filing on August 22, 2012, the Senvest Group reports beneficial ownership of 3,271,485 shares. In the Senvest Group's Schedule 13G/A filing on February 14, 2013, the Senvest Group reports beneficial ownership of 3,767,503 shares. In the Senvest Group's Schedule 13G/A filing on February 12, 2014, the Senvest Group reports beneficial ownership of 4,602,998 shares. In the Senvest Group's Schedule 13G filing on February 14, 2014, the Senvest Group reports beneficial ownership of 4,945,932 shares, with Senvest Master individually reporting beneficial ownership of more than 10% of Immersion's Common Stock. Finally, in the Senvest Group's Schedule 13G/A filing on February 17, 2015, the Senvest Group reports beneficial ownership of 5,409,012 shares, representing more than 19.5% of Immersion's Common Stock. The Senvest Group's Form 13-F filings report beneficial ownership on a quarterly basis with figures consistent with the Schedules 13G. Thus, the

delinquent Form 4 filings made on August 1, 2014 represent only approximately 10% of the actual transactions and beneficial ownership of the Senvest Group during the covered period.

20.     Apparently concerned about its failure to properly report their transactions and ownership in their Form 4 filings, beginning in January 2015, the Senvest Group began to report their total transactions and beneficial ownership, noting in a footnote the following: "For convenience, the Reporting Persons have included all securities held by the Investment Vehicles, including securities in excess of the Reporting Person's pecuniary interest." Having obscured and hidden the extent of their unlawful short-swing profits in transactions from October 31, 2012 through July 22, 2014, and having flouted the requirements of the SEC Administrative Order pursuant to which the Senvest Group had agreed to comply with their reporting obligations under Section 16(a) of the Exchange Act, the Senvest Group thus determined to change its strategy and move closer to complying with its Section 16(a) reporting requirements. Nevertheless, to this date, the Senvest Group has not corrected its deficient Form 4 filings covering transactions from October 31, 2012 through July 22, 2014, nor have the members of the Senvest Group, other than Senvest Management and Mashaal, purported to properly report their transactions.

21.     Based on the improper delinquent Form 4 filings made by the Senvest Group, the Company entered into a settlement with the Senvest Group pursuant to which the parties calculated disgorgeable short-swing profits of $334,005.95. However, because the Senvest Group's Form 4 filings only purported to disclose transactions and ownership to the extent of Senvest Management's and Mashaal's pecuniary interests, the Company has failed to obtain disgorgement of millions of dollars of short-swing profits improperly garnered by other members of the Senvest Group. Given that Senvest Management's and Mashaal's disclosed ownership represented roughly 10% of the aggregate beneficial ownership of the Senvest Group, it is

estimated that the Senvest Group has failed to disgorge somewhere between $2.7 million and $3.0 million in short-swing profits.

## THE COMPANY'S SETTLEMENT WITH DEFENDANTS DOES NOT BAR THIS ACTION

22. In a letter to Immersion dated April 2, 2015, plaintiff's counsel specified the trades described above and requested that the Company undertake an investigation of the trades and bring appropriate action. In response, Immersion's counsel advised plaintiff that the Company had made an investigation in 2014 and determined that the proper amount of disgorgement was $334, 005.95 and that the Company had received that money and gave the Senvest defendants a release.

23. Plaintiff's counsel advised the Company of the information described in paragraphs 16 to 21, *supra*, and requested an explanation of why the Company accepted a settlement based on inaccurate Form 4's that disclosed only a small portion of the actual disgorgeable profits. The Company failed to provide an adequate response. Instead, counsel to the Company referred the matter to counsel to the Senvest Group who responded that the Form 4 filings reflect only the pecuniary interests of Senvest Management and Mashaal, thereby confirming that the other members of the Senvest Group have failed to account for and disgorge their short-swing profits.

24. The exact calculation of the unaccounted for short-swing profits cannot be known with precision because the Senvest Group has failed to make the required filings under Section 16(a) of the Exchange Act. However, the unaccounted for short-swing profits are estimated to be between $2.7 million and $3.0 million. Under well-settled case law, the Company's purported release of defendants' liability does not bar this action. *National Westminster Bancorp NJ v. Leone*, 702 F. Supp. 1132, 1140 (D. N.J. 1988).

9

## THE SENVEST GROUP'S REPEATED
## VIOLATIONS OF THE EXCHANGE ACT

25. In September 2014, Senvest Management entered into a negotiated settlement with the SEC relating to violations of Sections 13(d) and 16(a) of the Exchange Act and Rules 13d-1, 13d-2 and 16a-3 promulgated thereunder. The SEC Administrative Order noted that Senvest Management failed to file on a timely basis multiple Form 4 filings, as well as multiple required filings under Section 13(d) of the Exchange Act and concluded that Senvest Management violated Section 16(a) of the Exchange Act and Rule 16a-3 promulgated thereunder (and Section 13(d) of the Exchange Act and Rules 13d-1 and 13d-2 promulgated thereunder), and caused its managed accounts to violate these reporting requirements. The Administrative Order further ordered that Senvest Management "cease and desist from committing or causing any violations and future violations of Sections 13(d) and 16(a) of the Exchange Act and Rules 13d-1, 13d-2 and 16a-3 promulgated thereunder." Senvest Management agreed to the terms of the settlement and paid a civil monetary penalty in the amount of $68,000. https://www.sec.gov/litigation/admin/2014/34-73037.pdf

26. Notwithstanding their consent to the SEC Administrative Order, the Senvest Group has continued to fail to properly report their transactions for the period beginning October 31, 2012 and through July 22, 2014 and continues to be in violation of Section 16(a) of the Exchange Act and Rule 16a-3 promulgated thereunder. Due to these SEC reporting violations, it is not possible to compute with precision the amount of short-swing profits garnered by the Senvest Group from its short-swing trading of shares of Common Stock and derivative securities relating to the Common Stock.

## AS AND FOR A FIRST CLAIM FOR RELIEF
## AGAINST THE SENVEST GROUP

27. Plaintiffs repeat and realleges the allegations contained in paragraphs 1 through 26, *supra*, as if fully set forth herein.

28. As particularized in paragraphs 16 through 21 *supra*, the Senvest Group engaged in transactions which yielded short swing profits subject to disgorgement to the Company.

29. Each of the defendants has a pecuniary interest in short-swing profits realized by the Senvest Group and is liable to the extent of its respective pecuniary interests in the transactions to disgorge to Immersion its short swing profits.

30. Plaintiff is unable to precisely ascertain the amount of the disgorgeable profits, but upon information and belief, these profits are estimated to be between $2.7 million and $3.0 million.

## ALLEGATIONS AS TO DEMAND

31. Plaintiff made due demand on Immersion to commence this lawsuit but it has failed to do so.

WHEREFORE, plaintiff demands judgment on behalf of Immersion against defendants, as described above, plus attorneys' fees, interest and such other and further relief as to the Court may seem just and proper.

New York, New York
December 23, 2015

Yours, etc.

*(signed)* Paul D. Wexler
Paul D. Wexler
110 E. 59th Street, 23rd Floor
New York, New York 10022
(212) 317-0777

Glenn F. Ostrager
OSTRAGER CHONG FLAHERTY
 & BROITMAN P.C.

570 Lexington Avenue
New York, New York 10022
(212) 681-0600

*Attorneys for Plaintiff*